825 F.2d 408
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jack R. PHILLIPS, Petitioner,
v.
JEWELL RIDGE COAL COMPANY, Respondent,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-interest.
 No. 86-2596
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1987.
Decided July 24, 1987.
 
 Lawrence Lee Moise, III (Robert Austin Vinyard, on brief), for petitioner.
 
 
 1
 Michael Francis Blare (Penn, Stuart, Eskridge & Jones, on brief), for appellees.
 
 
 2
 Before HALL and WILKINS, Circuit Judges, and HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 HOFFMAN, Senior District Judge:
 
 3
 On October 26, 1976, Jack R. Phillips applied for black lung benefits under the Federal Coal Mine Health and Safety Act, as amended, 30 U.S.C. Sec. 901 et seq. The Deputy Commissioner approved Phillips's claim by a Notice of Initial Finding on October 25, 1979, at which time Phillips was placed on interim benefits payment status. Jewell Ridge Coal Company (Jewell) filed a Notice of Controversion on November 29, 1979. The Deputy Commissioner affirmed the initial finding of eligibility after reviewing both parties' evidence. Jewell refused to begin payments. Consequently, the case was forwarded to the Office of Administrative Law Judges for a formal hearing. Administrative Law Judge Charles P. Rippey conducted the hearing in Princeton, West Virginia, on June 17, 1983. Judge Rippey issued his Decision and Order denying benefits on October 25, 1983. Thereafter, Phillips noted an appeal with the Benefits Review Board (BRB), which affirmed Judge Rippey's decision in a Decision and Order dated June 26, 1986. Phillips then filed a Petition for Review of that decision on August 25, 1986. We AFFIRM the decision of the BRB.
 
 FACTS
 
 4
 Jack R. Phillips was born July 24, 1934. He completed four years of elementary school. Because he actually began working in coal mines before the legal age to do so, according to Phillips's testimony at his hearing, he had worked longer than the Social Security records indicated. Those records show that from 1952 until 1976 Phillips was continuously employed as a coal miner. The record shows that Phillips's last day at Jewell was January 26, 1976, at which time he quit working because of a disabling mine injury to his back.
 
 
 5
 The record includes voluminous medical studies, test results, and readings. There are 42 separate X-ray readings, three ventilatory studies, and three blood gas studies. Additionally five doctors have rendered their opinions on these studies, tests, and X-rays. The significance of the various medical records is that they are used by Phillips to establish his claim for benefits under 20 C.F.R. Sec. 727.203, and by Jewell to rebut the claimant's interim presumption of pneumoconiosis.
 
 STANDARD OF REVIEW
 
 6
 The Fourth Circuit has held that the scope of appellate review of the Benefits Review Board is set forth in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 921(b)(3), incorporated by 30 U.S.C. Sec. 932(a). That Act provides that findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. Beavan v. Bethlehem Mines Corporation, 741 F.2d 689, 691 (4th Cir. 1984). This Court should review the Board's decision for errors of law and for its adherence to the statutory standards governing the Board's review of the Administrative Law Judge's (ALJ's) factual findings. Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327 (9th Cir. 1980). The BRB described as limited the scope of its own review of the ALJ's decision. (Appendix 3). When the BRB reviews an administrative decision, the findings of fact are binding upon the BRB and may not be disturbed if the findings of fact are supported by substantial evidence, are rational, and are consistent with applicable law. O'Keefe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965).
 
 
 7
 As to mixed questions of law and fact such as the application of a statutory standard to particular fact findings, the court must sustain the Board's conclusions if they are reasonable. Gray v. Powell, 314 U.S. 402 (1941); Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055 (1st Cir. 1981). See also B. Schwartz, Administrative Law, 655-56 (2nd Ed. 1984). Whether a finding is viewed as one of fact or as one on a mixed question of law and fact, the agency determination is entitled to deference. Florida Steel Corp. v. NLRB, 601 F.2d 125, 129 (4th Cir. 1979). This panel has carefully reviewed the administrative record as well as the factual findings made by the ALJ and affirmed by the BRB. The findings are carefully documented and are reasonable.
 
 DISCUSSION
 
 8
 The Black Lung Benefits Reform Act of 1979 established criteria for determining whether a miner is or was totally disabled by pneumoconiosis. Rules promulgated under the Act provide the standards by which a claimant can take advantage of a presumption of total disability due to pneumoconiosis arising out of coal mine employment. 20 C.F.R. Sec. 727.200. For the purpose of the Act, pneumoconiosis is a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment. 20 C.F.R. Sec. 727.202. A miner who engaged in coal mine employment for at least ten years will be presumed to be totally disabled due to pneumoconiosis arising out of that employment if one of the following medical requirements is met.
 
 
 9
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410.428 of this title);
 
 
 10
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table:
 
 
 11
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 12
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table:
 
 
 13
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 14
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
 
 
 15
 (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.
 
 
 16
 20 C.F.R. Sec. 727.203(a)(1)-(5).
 
 
 17
 After a claimant comes forward with evidence of one of the above enumerated requirements, the employer may attempt to rebut the claimant's initial presumption of total disability. In the present case, Jewell elected to use for rebuttal purposes 20 C.F.R. Sec. 727.203(b)(3) which states:
 
 
 18
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; . . .
 
 
 19
 The ALJ correctly found that Phillips's 26 years of mining experience met the requirement of ten or more years of employment as a miner in the nation's coal mines found in 20 C.F.R. Sec. 722.203(a).
 
 
 20
 Judge Rippey then turned his attention to the medical evidence. This court has carefully reviewed the same evidence in order to determine whether the ALJ's decision, as affirmed by the BRB, is reasonable and is supported by substantial evidence.
 
 
 21
 One of the means by which a claimant can raise an interim presumption of total disability is by presentation of a chest X-ray which establishes the existence of pneumoconiosis. Of the 42 X-ray readings presented in this case, only three were positive for the existence of pneumoconiosis. (Appendix 10, 188-208, 242-247). Several of the readers reported that the films were of less than ideal technical quality. However, a persuasive majority of the 'B' readers, i.e., those most highly qualified, reported no evidence of pneumoconiosis. Consequently, this court finds that the decisions of the ALJ and BRB that the claimant did not meet the requirement of 20 C.F.R. Sec. 727.203(a)(1) are both reasonable and supported by substantial evidence.
 
 
 22
 In an attempt to satisfy the requirement of 20 C.F.R. Sec. 727.203(a)(2) Phillips has presented three ventilatory studies. The first was conducted in December 1976 and did meet the requirement established in 20 C.F.R. Sec. 727.203(a)(2). However a board-certified specialist in pulmonary medicine, Dr. Castle, an examining physician whose deposition is a part of the record (Appendix 209-228), found this 1976 test unreliable. Dr. Castle stated that tracings indicated that the tests were conducted for an insufficient duration and that fewer than three tests were performed.
 
 
 23
 A second ventilatory study was done on January 15, 1980. This study produced both qualifying and non-qualifying results. The latter were produced after the administration of a bronchodilator, used to remove the effects of non-compensable respiratory defects. Dr. Castle's deposition states: 'It is a very significant study in that the patient did respond dramatically to the bronchodilator and this is not seen in restrictive lung diseases, such as coal workers' pneumoconiosis.' (Appendix 222). Because Phillips responded in this manner, the second test ultimately produced non-qualifying results.
 
 
 24
 A third ventilatory study was completed in May 1983. Although this test produced qualifying results, the validity of the test was questioned by Dr. Kress because of irregular tracings. (Appendix 242). Judge Rippey's decision that the ventilatory studies were insufficient evidence to invoke the presumption of total disability is thus founded upon substantial evidence and is reasonable.
 
 
 25
 In regard to meeting the requirement of 20 C.F.R. Sec. 727.203(a)(3), blood gas studies of Phillips were completed on January 13, 1977, January 15, 1980, and May 20, 1983. Based especially on the 1983 study which produced values within the required levels, Judge Rippey's decision that the blood gas studies did invoke the interim presumption is reasonable and supported by substantial evidence.
 
 
 26
 Having reached this conclusion, the ALJ then turned his attention to Jewell's ability to rebut the presumption of Phillips's total disability by showing that Phillips's total disability did not arise either in whole or in part because of his coal mine employment. 20 C.F.R. Sec. 727.203(b)(3). The Fourth Circuit has considered carefully the employer's obligation under this code section. Bethlehem Mines Corporation v. Massey, 736 F.2d 120, 122-25 (4th Cir. 1984). The employer must rule out the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption. In Massey the court examines the intent of the Black Lung Act and states: 'The reality of coal mine employment is such that many physical and environmental factors may converge to produce a totally disabling respiratory or pulmonary impairment.' Massey, 736 F.2d at 124. The court goes on to note that in those cases in which the combined effect of several diseases disable the miner, the employer cannot meet its burden of proof by focusing solely on the disabling potential of the miner's pneumoconiosis. The employer must establish that the miner's primary condition was not aggravated to the point of total disability by prolonged exposure to coal dust. Massey, 736 F.2d at 124.
 
 
 27
 In the present case, five physicians addressed Phillips's respiratory condition--Drs. Buddington, Castle, Claustro, Kress and Paranthaman. Dr. Reddy also treated Phillips, but for the claimant's back and knee problems only. Dr. Buddington diagnosed a moderate to severe chronic respiratory impairment and stated that Phillips's primary pulmonary disorder 'is probably a combination of distal and proximal airway obstruction.' (Appendix 107).
 
 
 28
 Dr. Claustro found that Phillips had chronic obstructive pulmonary disease caused either by pneumoconiosis or bronchial asthma. (Appendix 105).
 
 
 29
 Drs. Castle and Kress gave similar diagnoses. Both stated that Phillips suffered from bronchial asthma that arose from a genetic deficiency. (Phillips's brother also has asthma). Both doctors also stated that Phillips's bronchial asthma was aggravated by a 25-year history of smoking. Both doctors ruled out coal dust exposure as a factor in Phillips's condition. (Appendix 209-227, 241-247).
 
 
 30
 Dr. Paranthaman diagnosed pneumoconiosis; however, this diagnosis was based upon the same X-ray that was read as negative for pneumoconiosis by four 'B' readers. Dr. Paranthaman also diagnosed chronic bronchitis and emphysema but did not state that these conditions were aggravated by Phillips's coal mine employment.
 
 
 31
 Judge Rippey's decision and order acknowledges that he gave the greatest weight to the opinions of Drs. Castle and Kress. The Federal Judicial Center's Education and Training Series volume, E. Gillhorn, The 'Black Lung' Act: An Analysis of Legal Issues Raised Under the Benefit Program Created by the Federal Coal Mine Health and Safety Act of 1969 (as Amended), 1981, addresses the discretion of an ALJ to evaluate evidence. This reference points out that an ALJ is free to use his sound discretion to evaluate witness credibility. See also United States Steel Corp. v. Bridges, 582 F.2d 7 (5th Cir. 1978). Appellate courts have somewhat narrowed the deference given to an ALJ's allocation of weight to medical evidence. Generally, greater weight is accorded to the report of an examining physician. An ALJ may not substitute his own opinion for that of a physician who testified before him. See, e.g., Gober v. Matthews, 574 F.2d 772 (3rd Cir. 1978); Schaaf v. Matthews, 574 F.2d 157 (3rd Cir. 1978). According to the record of the administrative hearing, no physician actually testified. Dr. Castle's deposition was admitted in evidence (Appendix 209-227), as were the reports and diagnoses of all other physicians referred to herein. We find that Judge Rippey exercised his sound discretion in allocating as he did the greatest weight to the opinions of Drs. Castle and Kress, and consequently in deciding that Jewell had rebutted the interim presumption of total disability from pneumoconiosis.
 
 CONCLUSION
 
 32
 For the reasons specified in the foregoing sections, we AFFIRM the decision of the Benefits Review Board.
 
 
 33
 AFFIRMED.