Lila BAKER, Widow of Anthony
Baker, Petitioner,

v.

UNITED STATES STEEL CORP., Em-
ployer–Respondent, Director, Office of
Workers' Compensation Programs,
United States Department of Labor
Party-in-Interest, Respondent.

No. 87–7707.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1989.

Patricia Guthrie Fraley, Cooper, Mitch,
Crawford & Kuykendall, Birmingham, Ala.,
for petitioner.

Ronald G. Ray, Sr., Michael Denney and
Paul L. Frieden, U.S. Dept. of Labor, Wash-
ington, D.C., for O.W.C.P.

Robert C. Jones, United States Steel
Corp., Pittsburgh, for U.S. Steel Corp.

Before RONEY, Chief Judge,
JOHNSON, Circuit Judge, and
TIDWELL *, District Judge.

G. ERNEST TIDWELL, District
Judge:

Petitioner Lila Baker appeals the deter-
mination of the Benefits Review Board
("Board") that she is not entitled to surviv-

---

* Honorable G. Ernest Tidwell, U.S. District Judge
for the Northern District of Georgia, sitting by
designation.

ors benefits under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.* We reverse the Board's decision and remand for further findings.

## I. FACTS

Mrs. Baker is the widow of Anthony Baker ("Baker") who was employed as a machinist and machine shop foreman by Respondent United States Steel ("USS") from 1924 until 1970. Baker's work involved repairing various items of equipment used in the mining of coal. He worked in a machine shop which serviced three of USS's coal mines. The shop was located at a central location between the three mines and was no closer than one-half mile to any of the mines. During the course of his employment in the machine shop, Baker was exposed to large amounts of coal dust.

In March 1977, Baker filed a claim for black lung disability benefits with the Department of Labor; this claim was denied. Baker died in January 1982 and his widow, the Petitioner here, filed for survivors benefits in March 1982. After an informal conference, the Department reaffirmed its previous denial of benefits. Mrs. Baker then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). In a September 1985 decision, the ALJ denied benefits on two grounds, finding that (1) Baker was not a miner within the meaning of the Act, and (2) the presumption of total disability due to pneumoconiosis had been rebutted by medical evidence. Mrs. Baker appealed both findings to the Benefits Review Board. In an unpublished decision announced on September 28, 1987, the Board affirmed the ALJ's ruling that Baker was not a miner within the meaning of the Act and, finding that ground sufficient to support the denial of benefits, declined to address the medical evidence issue. Mrs. Baker now appeals the Board's decision to this court.

## II. DISCUSSION

The scope of our review in this case is limited to determining whether the Board erred by upholding the ALJ's decision. In making this determination we recognize that "[t]he Board is required to uphold the ALJ's decision if it is in accordance with the law and supported by substantial evidence from the entire record." *Stomps v. Director, Office of Workers' Compensation Programs,* 816 F.2d 1533, 1534 (11th Cir.1987); *Foreman v. Director, Office of Workers' Compensation Programs,* 794 F.2d 569, 570 (11th Cir.1986). *See* 30 U.S. C. § 932(a); 33 U.S.C. § 921(b)(3); 20 C.F. R. § 802.301 (1985).

Mrs. Baker raises two issues on this appeal: (1) whether the Board erred in affirming the ALJ's ruling that Baker was not a miner within the meaning of the Act, and (2) whether the ALJ erred in ruling that the presumption of total disability was rebutted by the medical evidence, an issue the Board did not address.

### A. *Definition of Miner Under the Act*

Black lung benefits are available only to disabled coal miners and their survivors. 30 U.S.C. § 921(a). The Act defines the term "miner" as

> any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d). *See also* 20 C.F.R. §§ 725.101(a)(26), 725.202(a) (1985). In interpreting this definition, courts have applied a two-prong test: (1) whether the individual seeking benefits performed an activity related to the extraction or preparation of coal (the "function requirement"), and (2) whether the individual worked in or around a coal mine (the "situs requirement"). *Foreman,* 794 F.2d at 570.

The ALJ applied this two-prong function/situs test, finding that Baker met the function prong because his work in repairing coal mine equipment was an integral part of the coal extraction process. The ALJ ruled that Baker did not meet the

situs prong, however, because he worked in a repair shop located one mile from the coal mines. Respondents do not challenge the finding that Baker satisfied the function prong. Accordingly, we will limit our discussion to the ALJ's finding that Baker did not work at a covered situs.

We begin with the statutory requirement that a claimant work "in or around a coal mine." 30 U.S.C. § 902(d). As a threshold matter, we note that although the ALJ concluded that the repair shop in this case was located "a mile" from USS's coal mines, Mrs. Baker contends that the distance was one-half mile and USS concedes that the distance was no farther than three-fourths of a mile. Because the ALJ based his decision on the one mile distance, we will assume that the actual distance was one mile for the purposes of this appeal.

A repair shop located one mile from a coal mine is obviously not located "in" a coal mine. Baker may nevertheless be deemed a miner under the statute if he worked "around" a coal mine. There is no indication that Congress intended to use the word "around" as a term of art in the statute. Therefore, adhering to the basic tenet of statutory interpretation that words should be given their common meaning unless Congress has declared otherwise, we note that the following are among the definitions given for "around" in Webster's Third New International Dictionary (1986): "in the neighborhood of; near; in the same region with; close to." Given these definitions it seems clear that a repair shop located within one mile of a coal mine may be deemed to be "around" the mine within the meaning of the statute. In addition to effectively reading the words "or around" out of the statute, the ALJ's restrictive interpretation of the situs requirement is at odds with our recognition that the Act, being remedial legislation, should be liberally construed in favor of the claimant. *Brown v. Director, Office of Workers' Compensation Programs*, No. 87–7358, slip opinion at 4309, 4312 (11th Cir. August 15, 1988) ("The history of [the Act] expresses a concern for miners and their right to fair compensation ..."); *Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.*, 598 F.2d 945, 951 (5th Cir.1979) ("One purpose of the 1977 amendments [to the Act] was to liberalize benefits for claimants.").

The ALJ's restrictive interpretation of the situs requirement is also contrary to the limited case law applying the situs requirement to similar facts. Perhaps the leading case is *Skipper v. Mathews*, 448 F.Supp. 300 (M.D.Pa.1977), in which the court ruled that a claimant employed in a repair shop located an undisclosed distance from the mine was a "miner" within the meaning of the Act. The court determined that maintenance of mining equipment is an integral part of the coal extraction process and that the repair shop was a covered situs even though it was located an undisclosed distance from the mine. According to the court, the repair shop was a covered situs notwithstanding the fact that it was "not in the immediate area of a coal mine" because the legislative history of the Act indicated that the definition of coal mine should be liberally construed. *Id.* at 302–03. This court has previously cited *Skipper* favorably as an example of the liberal interpretation to be applied to the Act. *Freeman v. Califano*, 600 F.2d 1057, 1060 (5th Cir.1979).

Two circuit court decisions have also addressed the situs requirement in the context of an off-site repair shop. In an unpublished opinion, the Fourth Circuit affirmed an ALJ's finding that a central repair facility located from one and one-half to twenty miles from the coal mines it serviced was a covered situs. *Consolidation Coal Co. v. Graham*, 725 F.2d 674 (4th Cir.1983). In contrast, the Seventh Circuit affirmed an ALJ's finding that an electrical repair shop located over one and one-half miles from a coal mine was not a covered situs. *Director, Office of Workers' Compensation Programs v. Ziegler Coal Co.*, 853 F.2d 529 (7th Cir.1988). Applying the limited standard of review discussed *supra*, the Seventh Circuit upheld the ALJ's decision based on the dearth of evidence in the record establishing "the physical relationship between the repair

shop and [the] extraction site." *Id.* at 535. The court noted, however, that even though the "geographical distance from an extraction site is a proper factor to be considered in determining whether the situs requirement has been satisfied," the application of "an inflexible fixed-distance rule" would be inappropriate. *Id.* We agree with this interpretation of the situs requirement and also note that the circumstances underlying the *Ziegler Coal* decision are clearly distinguishable from those underlying the case now before us. In *Ziegler Coal,* the issue was not whether the claimant was entitled to benefits, but rather whether the benefits which had previously been approved should be paid from the Black Lung Disability Trust Fund or by the mine operator.

 Based on the statutory language and the persuasive authority from other circuits, we agree with the Seventh Circuit that the geographical distance of a work area from an extraction site is a relevant factor to be considered in determining whether a claimant works "in or around" a coal mine. We likewise reject the application of a rigid fixed-distance rule, finding that a claimant's satisfaction of the situs requirement is necessarily dependent on the circumstances underlying each particular claim. Because the ALJ's decision in this case was based exclusively on the distance of Baker's place of employment from the mine, we hold that the ALJ's strict geographical interpretation of the situs requirement was clearly erroneous as a matter of law.

 A thorough examination of the undisputed facts in the record in light of the command that the Act should be liberally construed in favor of the claimant indicates that Baker was a miner within the meaning of the Act. Baker was employed by USS for about 46 years, first as a machinist apprentice, then as a machinist, and finally as a machine shop foreman maintaining and repairing rail transportation equipment and underground coal hauling rail equipment. During the course of his employment, Baker was exposed to large amounts of coal dust while working in a machine shop centrally located between three of USS's mines but no closer than one-half mile to any one of the mines. It is clear that the situs requirement would have been met had USS chosen to operate three repair shops located on-site at each of its three mines. Under the ALJ's reasoning, however, workers in a more efficient and economical central repair shop maintained for the company's convenience are denied coverage under the Act, regardless of their coal dust exposure level. We find such a rigid situs requirement contrary to the remedial mandate of the Act.

Accordingly, in light of the fact that Baker was exposed to coal dust from three mines while working in a centrally located repair shop maintained for the company's convenience, we hold that the situs requirement was met in this case and that the ALJ's finding to the contrary was clearly erroneous. Baker was therefore a miner within the meaning of the Act and Mrs. Baker is entitled to survivors benefits if her husband's death was due to pneumoconiosis caused by his exposure to coal dust.

### B. *The Medical Evidence*

Although Mrs. Baker appealed to the Board the ALJ's decision that the medical evidence rebutted the presumption of disability, the Board declined to address the issue, basing its affirmance instead solely on the situs issue. Since the Board has not passed upon the medical evidence issue, we conclude that a remand to the Board for determination of the medical evidence issue is appropriate.

### III. CONCLUSION

The ALJ clearly erred in determining that Baker was not a miner within the meaning of the Act. Mrs. Baker is, therefore, entitled to survivors benefits if the medical evidence demonstrates that Baker's death was due to a medical condition covered by the Act.

Accordingly, we reverse the decision of the Board upholding the ALJ's determination that Baker was not a miner under the Act and remand to the Board for review of

the ALJ's finding as to the medical evidence.

REVERSED AND REMANDED.